UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/25/2024
```

Prompt Apparel LA, Inc.,

                                        Plaintiff,

                -against-

Chic Home Design LLC et al.,

                                        Defendants.

1:24-cv-00279 (SDA)

OPINION AND ORDER

STEWART D. AARON, United States Magistrate Judge:

Pending before the Court are (1) a motion by Defendants Chic Home Design LLC ("Chic") and YX1 Logistics LLC ("YX1") (collectively, the "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss the Amended Complaint in this action, as well as seeking judgment on Defendants' counterclaims, and pursuant to Rule 37(b)(2), seeking sanctions (Defs.' 9/30/24 Mot., ECF No. 57); and (2) a motion by Plaintiff Prompt Apparel LA, Inc. ("Plaintiff" or "Prompt"), pursuant to Rule 56, seeking partial summary judgment as to the First, Third and Fourth Causes of Action in the Amended Complaint. (Pl.'s 9/30/24 Mot., ECF No. 58.) For the reasons set forth below, both Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment are DENIED, and Defendants' motion for sanctions is DENIED.

BACKGROUND[1]

This nonjury case involves a dispute regarding a warehousing arrangement between Prompt and Chic. In November 2017, Prompt entered into a written agreement (the

---

[1] In the Background section below, the Court does not include a complete recitation of the facts of this case, but only the facts necessary to decide the pending motions.

"Agreement") pursuant to which Prompt was to provide warehouse services to Chic. (Agmt., ECF No. 57-10; Defs.' 56.1, ECF No. 57-19, ¶ 1; Pl.'s 56.1 Resp., ECF No. 64-17, ¶ 1.) The Agreement provides that Chic would pay a monthly storage fee, calculated on a cubic foot basis, as well as defined fees for services that Prompt would perform, such as warehouse clerical duties, providing supplies at a cost, and preparing and receiving shipments. (Defs.' 56.1 ¶ 2; Pl.'s 56.1 Resp. ¶ 2.)

With respect to fees for "[h]andling," the Agreement states that Chic would be charged by Prompt $0.24 per cubic foot. (Agmt. at PDF p. 3.) The Agreement provides that "[r]ates [were] to be effective for a period of no less than 12 months, with prices adjustments only if warranted (such as: a change in the nature or scope of [Chic's] business profile, or unforeseen material changes in operating costs of Prompt) and agreed to by both parties." (Agmt. at PDF p. 4.) The Agreement further provides that "[i]f on the anniversary date of [the] contract[,] price adjustments are necessary and not mutually agreed upon, the rates contained in [the] agreement shall increase by the Consumer Price Index for All Urban Consumers U.S. Cities Average published by The United States Bureau of Labor Statistics." (*Id*.) Near the bottom of the signature page of the Agreement, there is a handwritten addition, which states: "*Contract valid thru 01-01-2019[.]" (*Id*.)

After January 1, 2019, the parties continued to follow the terms of the Agreement. (*See* Pl.'s 56.1, ECF No. 58-1, ¶¶ 7-8, 18; Defs.' 56.1 Resp., ECF No. 67-3, ¶¶ 7-8, 18.) On February 15, 2019, Chic emailed Prompt to request that, effective February 1, 2019, YX1 be included in the "receiving reports and warehouse bills." (Pl.'s 56.1 ¶ 45; Defs.' 56.1 Resp ¶ 45.) The parties dispute whether YX1, which is not a signatory to the Agreement, is liable to Prompt for amounts

due under the Agreement. (*Compare* Pl.'s 9/30/24 Mot. at PDF pp. 27-28, *with* Defs.' 11/5/24 Opp. Mem., ECF No. 63, at 11-12.)

In May 2023, Prompt and Chic agreed to increase the storage rate from $0.24 per cubic foot to $0.29 per cubic foot. (Pl.'s 56.1 ¶ 19; Defs.' 56.1 Resp. ¶ 19.) On or about August 23, 2023, Prompt sent a notice to Chic stating that, effective October 31, 2023, it was terminating the Agreement. (Defs.' 56.1 ¶ 13; Pl.'s 56.1 Resp. ¶ 13.) The termination notice stated that, if Chic did not remove its merchandise from the warehouse by October 31, 2023, then effective November 1, 2023, and for as long as any of Chic's property remained in the warehouse, Chic would be charged at Prompt's current rate of $0.43 per cubic foot for storage. (Pl.'s 56.1 ¶ 34; Defs.' 56.1 Resp. ¶ 34.)

Although the Agreement contains a provision regarding termination of the Agreement by Chic,[2] it does not contain a provision regarding termination by Prompt. The parties dispute whether Prompt had a right to terminate the Agreement as it did. (*Compare* Defs.' 11/5/24 Mem. at 6-11, *with* Freedman Aff., ECF No. 64, ¶ 5.) The parties further dispute whether Chic, through its conduct, accepted the storage rate of $0.43 per cubic foot commencing in November 2023. (*See* Pl.'s 9/30/24 Mot. at PDF p. 23 (Plaintiff stating that "[t]he only issue in dispute is whether Chic agreed, or is otherwise obligated, to pay the storage rate of $0.43 [per cubic foot] from November 1, 2023 onwards."); *see also* 8/29/23 Chic email to Prompt, ECF No. 57-11, at PDF pp. 7-8 ("Chic is not in agreement to pay $.43 storage as of November 2023. Our agreement was $.29 . . ..").)

---

[2] The Agreement states that "Prompt requires a 6 month notice of terminating/relocating warehouses . . .." (Agmt. at PDF p. 4.)

Prompt has charged Chic $0.43 per cubic foot since November 1, 2023. (Pl.'s 56.1 ¶ 38; Defs.' 56.1 Resp ¶ 38.) Chic has refused to pay the $0.43 per cubic foot rate. (Pl.'s 56.1 ¶ 41; Defs.' 56.1 Resp ¶ 41.) Prompt contends that it is owed $1,246,142.31 through October 31, 2024. (Pl.'s 56.1 ¶ 44.) Defendants deny that this amount is owed, and contend that Chic has paid the agreed-upon amounts due under the Agreement and that the amounts were accepted by Prompt without objection. (Defs.' 56.1 Resp. ¶¶ 41, 44.)

On or about January 4, 2024, after Prompt had filed an action in New York state court against Defendants (*see* Procedural History section, *infra*), Prompt sent a letter to Chic's bank, Israel Discount Bank of New York ("IDB"),[3] stating that Chic had not paid amounts due to Prompt and that Chic had not removed its property from Prompt's warehouse. (Defs.' 56.1 ¶ 28; Pl.'s 56.1 Resp. ¶ 28.)

## PROCEDURAL HISTORY

On or about December 13, 2023, Prompt commenced an action against Defendants in New York state court alleging that Defendants owed monies to Prompt under the terms of the Agreement, but Prompt never served Defendants with process. (Defs.' 56.1 ¶¶ 20-21, 26; Pl.'s 56.1 Resp. ¶¶ 20-21, 26.) On January 12, 2024, after Defendants learned of the New York state court action, that action was removed by Defendants to this Court. (Defs.' 56.1 ¶ 30; Pl.'s 56.1 Resp. ¶ 30; Not. of Removal, ECF No. 1.)

On February 2, 2024, Prompt filed an Amended Complaint in this action asserting claims for breach of contract (First Cause of Action), unjust enrichment (Second Cause of Action),

---

[3] IDB was a secured lender to Chic. (Pl.'s Supp. 56.1, ECF No. 64-18, ¶ 5; Defs.' 56.1 Supp. Resp., ECF No. 67-4, ¶ 5.)

reasonable value of warehousing services (Third Cause of Action) and declaratory judgment (Fourth Cause of Action). (Am. Compl., ECF No. 7, ¶¶ 6-60.) On February 4, 2024, Defendants filed their Answer to the Amended Complaint and Counterclaims. (Defs.' Ans. & Counterclaims, ECF No. 15.) Defendants assert counterclaims for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), tortious interference (Count Three), declaratory judgment (Count Four) and permanent injunction (Count Five). (*Id*. at PDF pp. 14-16.)

On consent of the parties (*see* Consent, ECF No. 17), this case was referred to the undersigned on February 20, 2024, for all purposes, including trial and the entry of final judgment. Following the close of discovery, Plaintiff moved for partial summary judgment and Defendants moved for summary judgment, which motions are now before the Court.

In its motion for partial summary judgment, which is brought with respect to the First, Third and Fourth Causes of Action, Prompt seeks to recover from Chic and YX1 amounts due under invoices that are based upon a rate of $0.43 per cubic foot. (*See* Pl.'s 9/30/24 Mot. at PDF pp. 16-22.) In their motion for summary judgment, Defendants seek dismissal of the Amended Complaint, arguing that Prompt breached the Agreement by purporting to terminate the Agreement and by seeking to collect monies not owed. (Defs.' 9/30/24 Mem., ECF No. 57-1, at 5-10, 12-13.) Defendants also seek judgment on their counterclaims. (*Id*. at 10-12.)

## SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-

23 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . .." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant if there is a genuine dispute as to those facts." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (internal quotation marks and citation omitted). When confronted with cross-motions for summary judgment, courts analyze "each motion separately, in each case construing the evidence in the light most favorable to the non-moving party." *Quest Shipping Ltd. v. Am. Club*, 612 F. Supp. 3d 373, 379-80 (S.D.N.Y. 2020) (cleaned up).

"[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)). "[T]he district court's task on a summary judgment motion—even in a nonjury case—is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) (citing *Vona v. Cnty. of Niagara*, 119 F.3d 201, 205 n.4 (2d Cir. 1997)).

## ANALYSIS

### I.    The Parties' Motions For Summary Judgment

Given the disputed issues of material fact that are present on the record before the Court, as explained below, both Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment are denied.

#### A.    Breach Of Contract

Both Plaintiff and Defendants seek summary judgment with respect to the breach of contract claims (*i.e.*, Plaintiff's First Cause of Action and Count One of Defendants' Counterclaims). Under New York law,[4] the elements of a claim for breach of contract are: "[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010) (citation omitted).

In the present case, the Court cannot determine as a matter of law whether or not Defendants breached the Agreement, as Plaintiff contends, by failing to pay amounts due (*see* Am. Compl. ¶¶ 36-39) because there is a factual dispute as to whether the rate to be charged was the $.43 per cubic foot sought by Plaintiff or the $.29 per cubic foot that Defendants assert applies.[5] Nor can the Court determine as a matter of law whether or not Plaintiff breached the Agreement, as Defendants contend, by "demand[ing] sums of money in excess of that to which

---

[4] Both parties argue New York law in their legal memoranda. (*See* Pl.'s 9/30/24 Mot. at PDF p. 23; Defs.' 9/30/24 Mem. at 5.) This is sufficient to establish the applicable choice of law. *See ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*, No. 16-CV-06430 (GHW), 2017 WL 3396422, at *3 (S.D.N.Y. Aug. 8, 2017) (citing *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

[5] There also is a factual dispute (or perhaps a mixed question of law and fact) regarding whether one of the Defendants, *i.e.*, YX1, can be liable under the Agreement since it is not a signatory to the Agreement.

it is entitled" (Defs.' Ans. & Counterclaims at p. 14), again, because the parties dispute the rate to be charged. Thus, both Plaintiff's and Defendants' motions for summary judgment with respect to the breach of contract claims are denied.

**B.    Breach Of Covenant Of Good Faith And Fair Dealing**

On the record before the Court, summary judgment cannot be granted to Defendants on Count Two of their Counterclaims for breach of the covenant of good faith and fair dealing. "Under New York law, a duty of good faith and fair dealing is implied in every contract, to the effect that neither party 'shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)). "The implied covenant does not include any term inconsistent with the terms of the contractual relationship." *Id*. "The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages." *Id*.

Defendants contend that Plaintiff breached the covenant of good faith and fair dealing by issuing a notice of termination of the Agreement. (Defs.' Ans. & Counterclaims at p. 15.) The Agreement is silent regarding when Plaintiff can terminate the Agreement. "In New York, the general rule is that a contract that does not contain a termination provision is terminable upon reasonable notice." *Jinjit, Ltd. v. Jovani Fashion, Ltd*., No. 14-CV-02585 (DAB), 2016 WL 11618504, at *7 (S.D.N.Y. Mar. 30, 2016). There are issues of fact regarding whether or not the notice provided was reasonable, thus precluding summary judgment. *See Millgard Corp. v. E.E. Cruz/Nab/Fronier-Kemper*, No. 99-CV-02952 (LBS), 2003 WL 22801519, at *5 (S.D.N.Y. Nov. 24,

2003) (denying summary judgment where issues of fact regarding reasonable notice of termination).

      C.      **"Reasonable Value Of Warehousing Services"**

Plaintiff seeks summary judgment on its Third Cause of Action, which is pled as a claim for "Reasonable Value of the Warehousing Services." (*See* Am. Compl. at 6.) Plaintiff does not identify the precise cause of action under which it seeks to recover the reasonable value of its warehousing services, separate from its claim for unjust enrichment.[6] (*See id*.; *see also* Pl.'s 9/30/24 Mot. at PDF pp. 18-20.) In any event, there are issues of fact regarding the reasonable value of warehousing services, which cannot be resolved in the context of a motion for summary judgment. *Cf. Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, No. 20-CV-09183 (JGK), 2024 WL 4229902, at *13 (S.D.N.Y. Sept. 17, 2024) (whether defendants reimbursed plaintiffs for "reasonable value of services" presented question of fact) (denying summary judgment on unjust enrichment claim under New York law).

      D.      **Declaratory Judgment**

Plaintiff seeks summary judgment on its Fourth Cause of Action for a declaratory judgment. Plaintiff requests a declaration that it terminated the Agreement effective as of October 31, 2023, and that, for warehousing services on and after November 1, 2023, Defendants must pay $0.43 per cubic foot for storage. (Am. Compl. ¶ 60.)[7] As set forth in Analysis Sections I

---

[6] The reasonable value of services performed is the proper measure of damages for causes of action sounding in unjust enrichment and quantum meruit. *See DG & A Mgmt. Servs., LLC v. Sec. Indus. Ass'n Compliance and Legal Div.*, 78 A.D.3d 1316, 1318 (3d Dep't 2010).

[7] Plaintiff's Amended Complaint contains two paragraphs that are numbered "60.") (*See* Am. Compl. at p. 7.) The citation in the text is to the second paragraph bearing the number "60."

and II, *supra*, there are issues of fact regarding Plaintiff's termination of the Agreement and the rate to be paid under the Agreement. Thus, Plaintiff is not entitled to summary judgment on its Fourth Cause of Action.

Defendants seek summary judgment on Count Four of their Counterclaims for a declaratory judgment. Defendants seek a declaration that Plaintiff's termination notice is void and of no force and effect. (Defs.' Ans. & Counterclaims at 17.) Again, there are issues of fact regarding Plaintiff's termination of the Agreement, which preclude summary judgment being granted to Defendants.

### E.    Tortious Interference

Defendants seek summary judgment on Count Three of their Counterclaims for tortious interference. Defendants allege that Plaintiff intentionally interfered with Chic's agreements and economic benefits with IDB by "issuing false and/or misleading termination letters and making financial demands of IDB." (Defs.' Ans. & Counterclaims at 15.) In their moving memorandum, Defendants include arguments based upon a claim for tortious interference with prospective business advantage.[8] (*See* Defs.' 9/30/24 Mem. at 11-12.)

"A claim for tortious interference with prospective business advantage must allege that: (a) the [offended party] had business relations with a third party; (b) the [offending party] interfered with those business relations; (c) the [offending party] acted with the sole purpose of harming the [offended party] or by using unlawful means; and (d) there was resulting injury to

---

[8] Thus, although the Amended Complaint also refers to Prompt's alleged tortious interference with Chic's "agreements" and "contractual rights[,]" Chic does not appear to be asserting a claim for tortious interference with contract. Notably, Chic does not allege that IDB breached any agreement with Plaintiff. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (setting forth elements for tortious interference with contract claim under New York law including breach).

the business relationship." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 108 (1st Dep't 2009) (citation omitted); *see also Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (framing third element in terms of using "dishonest, unfair or improper means").

Defendants have not established that they are entitled to summary judgment on such a claim. At the very least, there are issues of fact regarding whether Plaintiff acted with the sole purpose of harming Defendants and/or whether Plaintiff used unlawful means. (*See* Friedman Aff. ¶ 14.) Therefore, summary judgment on Count Three of Defendants' Counterclaims is denied. *See Cestari v. Bancorp, Inc.*, 364 F. Supp. 3d 327, 340 (S.D.N.Y. 2019) (denying summary judgment when, *inter alia*, disputed facts regarding whether defendant used dishonest, unfair, or improper means).[9]

## II.    **Defendants' Motion For Sanctions**

Defendants seek sanctions against Plaintiff, pursuant to Rule 37(b)(2), for Plaintiff's purported failure to provide discovery in compliance with a Court Order. (Defs.' 9/30/24 Mem. at 13-16.) Defendants contend that, during the deposition of Plaintiff's corporate designee, Herman Friedman, he "conceded that Prompt did not provide all documents as ordered by the Court." (Defs.' 9/30/24 Mem. at 14.) Plaintiff responds that certain of the documents referenced by Defendants do not exist and that it did not produce QuickBooks records because they did not

---

[9] In their moving memorandum, Defendants do not include arguments as to why they would be entitled to summary judgment on Count Five of their Counterclaims for a permanent injunction. In Count Five, Defendants seek to enjoin Plaintiff from taking any further action in connection with the termination notice. (Defs.' Ans. & Counterclaims at 16-17.) Even assuming, *arguendo*, that Defendants were seeking summary judgment on Count Five, they would not be entitled to it because, again, there are issues of fact regarding Plaintiff's termination notice, as discussed above.

contain information pertaining to the Agreement or any modification thereof. (Friedman Aff. ¶¶ 17-21.)

Rule 37(b)(2)(A) provides, in relevant part, that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders[,] including imposing certain enumerated sanctions. Fed. R. Civ. P. 37(b)(2)(A). "A court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions." *Loc. 3621, EMS Officers Union, DD-37, AFSCME, AFL-CIO v. City of New York*, No. 18-CV-04476 (LJL) (SLC), 2021 WL 134566, at *3 (S.D.N.Y. Jan. 14, 2021). "Sanctions under Rule 37 are "a harsh remedy to be used only in extreme situations." *Id*. (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). The Court retains "wide discretion in imposing sanctions." *Streets v. Mangena*, No. 23-CV-10648 (AT) (SDA), 2024 WL 4729059, at *2 (S.D.N.Y. Oct. 18, 2024), *report and recommendation adopted*, 2024 WL 4729044 (S.D.N.Y. Nov. 8, 2024). In deciding whether to impose sanctions under Rule 37(b), courts in the Second Circuit consider four non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance*." S.E.C. v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013).

Defendants contend that Plaintiff failed to comply with the Court's May 23, 2024 Order to produce "documents 'relating to the business transactions and warehousing agreements between Plaintiff and Defendant that were referenced in the Complaint in this action for the period January 1, 2023 through January 12, 2024[.]'" (*See* Defs.' 9/30/24 Mem. at 14 (quoting 5/23/24 Order, ECF No. 42.) However, that Order and the follow-on Order referenced by

Defendants (*see id*. (citing 6/12/24 Order, ECF No. 48)), required Plaintiff to produce only "email communications[,]" which was the only type of documents sought in Defendants' motion to compel, other than documents related to damages, which the Court denied. (*See* Defs.' 5/17/24 Letter Motion, ECF No. 37.) Because Defendants do not point to any Order requiring Plaintiff to produce QuickBooks records, the Court, in its discretion, finds that sanctions under Rule 37(b)(2) are not warranted. *See Loc. 3621*, 2021 WL 134566, at *4 (denying motion for sanctions under Rule 37(b)(2) when moving party did not identify court order directing production).

Moreover, even if the QuickBooks records were the type of documents covered by the Court's Orders, Plaintiff disputes whether they are responsive. (Friedman Aff. ¶ 21.) The deposition in question took place on June 28, 2024. (*See* Friedman Dep. Tr., ECF No. 57-8.) Discovery in this action closed on August 9, 2024. (*See* Civil Case Management Plan and Scheduling Order, ECF No. 16; *see also* 5/3/24 Order, ECF No. 36.) Thus, Defendants had ample opportunity to seek further discovery regarding this issue prior to the discovery deadline, including by filing another motion to compel if necessary, and failed to do so. In these circumstances, Defendants' request for sanctions is denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 57) is DENIED and Plaintiff's motion for partial summary judgment (ECF No. 58) also is DENIED. In addition, Defendants' motion for sanctions (ECF No. 57) is DENIED. No later than January 17, 2025, the parties shall submit a Joint Pretrial Order, in accordance with the undersigned's Individual Practices.

**SO ORDERED.**

Dated:    New York, New York
          November 25, 2024

_____
STEWART D. AARON
United States Magistrate Judge