USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Prompt Apparel LA, Inc.,

                        Plaintiff,

-against-

Chic Home Design LLC et al.,

                        Defendants.

1:24-cv-00279 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

      Plaintiff Prompt Apparel LA, Inc. ("Plaintiff" or "Prompt") filed an action in New York state court against Defendants Chic Home Design LLC ("Chic") and YX1 Logistics LLC ("YX1") (collectively, the "Defendants") arising out of a warehousing arrangement between Prompt and Chic. After the action was removed to this Court on the basis of diversity jurisdiction, Plaintiff filed an Amended Complaint (Am. Compl., ECF No. 7) and Defendants filed an Answer and Counterclaims. (Ans. & Counterclaims, ECF No. 15.)

      Plaintiff contends that it is entitled to recover a money judgment against Defendants for unpaid invoices for warehousing services or, at the very least, is entitled to recover a reasonable storage rate. (*See* Pl.'s Proposed Findings & Concls., ECF No. 78, at 17-22; *see also* Pl.'s Trial Br., ECF No. 83, at 10-13; Pl.'s Post-Trial Br., ECF No. 96, at 12-18.) In turn, Defendants contend that Plaintiff is not entitled to any recovery and that YX1 is not liable to Plaintiff since it has no agreement with Plaintiff. (*See* Defs.' Proposed Findings & Concls., ECF No. 77, at 7-8; *see also* Joint Pre-Trial Order ("JPTO"), ECF No. 74, at 8; Defs.' Post-Trial Br., ECF No. 95, at 5-13.)

      The parties consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636, and the Court conducted a bench trial on April 7, 2025 and April 8, 2025. (Trial

Tr., ECF Nos. 91 & 93.) At trial, Herman Friedman and Issac Friedman (who are principals of Prompt) testified on behalf of Plaintiff. (*See* Trial Tr. at 9-289.) Defendants called as a witness Chaim Reisz, who worked for Plaintiff handling accounts receivable, billing and collections. (*See id*. at 290.) Although Defendants identified in the JPTO six other trial witnesses (*see* JPTO at 12), Defendants called no other witnesses. No representative of Chic or YX1 testified at trial. Closing arguments were held on May 21, 2025.

Having considered all the evidence and assessed the credibility of the witnesses, the Court makes the following findings of fact and reaches the following conclusions of law pursuant to Federal Rule of Civil Procedure 52.

**FINDINGS OF FACT**[1]

Prompt operated a warehouse in Ontario, California (the "Warehouse"). (JPTO Stip. ¶ 7.A.)[2] On or about November 2, 2017, Prompt and Chic entered into a written and signed agreement (the "Agreement"), pursuant to which Chic delivered merchandise to be stored in the Warehouse. (*Id*. ¶ 7.B.) The Agreement was for an initial term beginning in or about November 2, 2017 and ending on January 1, 2019. (*Id*. ¶ 7.C.)

The Agreement provided that Chic would pay a monthly storage fee, calculated on a cubic foot basis, as well as defined fees for services that Prompt would perform, such as warehouse clerical duties, providing supplies at a cost, and preparing and receiving shipments. (*See* Agmt., Pl.'s Trial Ex. 1.) With respect to fees for "[h]andling," the Agreement states that Chic would be

---

[1] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

[2] On page 11 of the JPTO, the parties stipulated to certain facts in paragraph 7. Citations to the stipulated facts are made in the format "JPTO Stip. ¶ 7.__."

charged by Prompt $0.24 per cubic foot. (Agmt. at p. 2.) The Agreement provided that "[r]ates [were] to be effective for a period of no less than 12 months, with prices adjustments only if warranted (such as: a change in the nature or scope of [Chic's] business profile, or unforeseen material changes in operating costs of Prompt) and agreed to by both parties." (Agmt. at p. 3.) Near the bottom of the signature page of the Agreement, there is a handwritten addition, which states: "*Contract valid thru 01-01-2019[.]" (*Id.*) Nevertheless, the parties continued to perform under the contract after January 1, 2019. (Trial Tr. at 20 (H. Friedman).) Prompt issued invoices pursuant to the Agreement, which were due to be paid on a net 30 basis. (JPTO Stip. ¶ 7.D.)

On February 15, 2019, Chic emailed Prompt to request that YX1 be included in the receiving reports and invoices. (Pl.'s Ex. 4 (Liza Fagarita of Chic stating: "We are required to make these change[]s for insurance claim purposes."); Trial Tr. at 74 (H. Friedman).) Thereafter, Prompt added YX1 on all receiving reports and invoices. (*See* Pl.'s Exs. 9-46; Trial Tr. at 79 (H. Friedman).)

From time to time, Chic and Prompt agreed to increase the rates as charged by Prompt. (JPTO Stip. ¶ 7.C.) In May 2023, Prompt and Chic agreed to increase the storage rate from $0.24 per cubic foot to $0.29 per cubic foot.[3] (Trial Tr. at 25 (H. Friedman); 173-74 (I. Friedman); *see also* Pl.'s Ex. 2 at 001.) Beginning with the June 1, 2023 invoice, Chic paid the $0.29 per cubic foot

---

[3] Defendants argue that Chic understood the increased storage rates to be part of a larger agreement and did not agree to an increase in the storage rate irrespective of other terms. (Defs.' Post-Trial Br. at 6-7.) The Court credits the testimony of Herman and Issac Friedman that Prompt and Chic agreed to an increased storage rate of $0.29 per cubic foot, as set forth in Issac Friedman's May 19, 2023 email to Nasiri (Pl.'s Ex. 2 at 001 ("As per our conversation at our last meeting, the price or storage starting June 1 is $0.29 per [cubic foot].").), while continuing to negotiate other terms including, most notably, how long that rate would continue. (*See id.* (explaining further discussions required for continuation beyond October 2023).) Contrary to Defendants' argument (Defs.' Post-Trial Br. at 6 n.3), the Court finds that Herman Friedman's 30(b)(6) deposition testimony is not inconsistent. Herman Friedman testified that the $0.29 per cubic foot rate was agreed to prior to June 1, 2023 and prior to discussions regarding continuation. (*See* H. Friedman Dep. Tr., ECF No. 57-8, at 258-59; *see also id.* at 256-57.)

3

storage rate. (Trial Tr. at 25 (H. Friedman); 176-77 (I. Friedman).) The parties continued to negotiate other terms, including how long the $0.29 per cubic foot storage rate would continue. (*See* Pl.'s Ex. 2 at 001.)

On June 7, 2023, Prompt proposed that Chic pay the already agreed $0.29 rate until the end of 2023, but that all inventory above 200,000 cubic feet after December 31, 2023 would be charged at 1 ½ times the $0.29 rate (*i.e.*, at $0.44) from January 1, 2024 onwards, with the remainder charged at the $0.29 rate, and every cubic foot would be charged at 2 times the $0.29 rate from June 30, 2024 onwards (*i.e.*, at $0.58). (Trial Tr. at 189-90 (I. Friedman).) Chic never agreed to that proposal.[4] (*See id.* at 192; see also Pl.'s Post-Trial Br. at 14.)

In or around July 2023, Chic asked Prompt to carry out a work order relating to goods to be shipped to Bed Bath & Beyond. (Trial Tr. 63-65 (H. Friedman); Nasiri Dep. Tr. at 197-98.[5]) Prompt sent an invoice to Chic for $12,500.00 that has not been paid. (Pl.'s Ex. 9; Trial Tr. at 65 (H. Friedman).)

On August 23, 2023, Prompt sent a notice to Chic stating that, effective October 31, 2023, it was terminating the Agreement. (Pl.'s Ex. 3; *see also* Trial Tr. at 27-28 (H. Friedman).) The termination notice stated that, if Chic did not remove its merchandise from the warehouse by

---

[4] In his deposition, Nasiri testified that Chic consented to these terms. (Nasiri Dep. Tr. at 38-39.) Nasiri did not testify at trial and the Court does not find this testimony credible given the lack of any written correspondence supporting his testimony and the contrary testimony of Herman and Issac Friedman. In any event, Defendants now argue that there was no meeting of the minds and, therefore, that the last undisputed agreement reached between the parties was an agreement to rates set in January 2022 and confirmed on May 10, 2023, which Defendants confusingly refer to as the "May 2022 Rate Agreement." (Defs.' Post-Trial Br. at 2, 6.) As set forth herein, the Court finds that Prompt and Chic agreed to increase the storage rate from $0.24 per cubic foot to $0.29 per cubic foot, which went into effect on June 1, 2023.

[5] In the JPTO, Plaintiff designated certain portions of the Nasiri deposition transcript as part of its affirmative case, and they were submitted during trial. (JPTO at 12-14; Trial Tr. at 220.)

4

October 31, 2023, then effective November 1, 2023, and for as long as any of Chic's property remained in the warehouse, Chic would be charged at a rate of $0.43 per cubic foot for storage. (Pl.'s Ex. 3.)

During the period August 23, 2023 to October 31, 2023, Chic never removed any goods from the warehouse (other than those shipped to customers). (Trial Tr. at 33-34 (H. Friedman).) Beginning in November 2023, Prompt issued storage invoices using the $0.43 per cubic foot rate. (*See* Pl.'s Ex. 10; Trial Tr. at 36 (H. Friedman).) Chic disputed the rate and paid only a portion of the November 2023 invoice, albeit late, based on the $0.29 cent per cubic foot storage rate. (Trial Tr. at 37-38 (H. Friedman).) In early 2024, Chic made a request to remove its inventory from the warehouse, but Prompt refused because it was owed monies under its invoices and Prompt was holding the inventory as security. (Trial Tr. at 116-17 (H. Friedman).) Thereafter, Chic made two payments to Prompt, but not for the full amount that Prompt believed it was owed. (Trial Tr. at 117 (H. Friedman), 241 (I. Friedman).)

In mid-2024, Prompt engaged auctioneers to auction the inventory, but Chic threatened that, if Prompt sold the inventory, it would be sued for millions of dollars in damages. (Trial Tr. at 87, 121-24, 127 (H. Friedman), 287 (I. Friedman).) In addition, Chic's lender, Israel Discount Bank ("IDB"), asserted that it had a superior lien over the inventory and that Prompt therefore could not auction them. (*Id*. at 156-57 (H. Friedman), 287 (I. Friedman).) When Prompt indicated an intention to move forward with the auction, IDB filed a lawsuit in New Jersey and seeking a court order preventing the auction from proceeding.[6] (*Id*. at 136.)

---

[6] The lawsuit, captioned *Israel Discount Bank v. Prompt Apparel LA, Inc., Herman Friedman, Isaac Friedman, and A.J. Willner Auctions, LLC*, initially was filed on December 20, 2024, was filed in the Superior

5

Prompt shipped every order it received from Chic, and the last order was in May 2024. (Trial Tr. at 26 (H. Friedman); *see also* Pl. Ex. 30.) Chic has not removed any goods from the warehouse since June 1, 2024. (Trial Tr. at 71-72 (H. Friedman).)

On January 7, 2025, the parties to the New Jersey lawsuit entered into a Settlement Agreement that permitted an auction to proceed. (Defs.' Ex. BBBB.) Thereafter, although an auction was scheduled, Prompt made a business decision not to proceed with the auction. (*See* Trial Tr. at 140, 145 (H. Friedman); *see also* Trial Tr. at 332-33 (Plaintiff's counsel referring to "business determination" and "business judgment decision").)

## CONCLUSIONS OF LAW

With respect to the First Cause of Action in Prompt's Amended Complaint, for breach of contract,[7] the Court finds by a preponderance of evidence that Chic breached the Agreement by failing to pay the $12,500.00 invoice for work relating to goods shipped to Bed Bath & Beyond. (*See* Pl.'s Post-Trial Br. at 6.) Thus, Prompt is entitled to damages in the amount of $12,500.00. *See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03-CV-02132 (GBD) (KNF), 2006 WL 728407, at *3 (S.D.N.Y. Mar. 21, 2006) ("The proper measure of damages for breach of contract is the amount necessary to put the plaintiff in as good a position as he would have been if the defendant had not breached the contract."). In addition, under New York law, interest "shall be

---

Court of the State of New Jersey, County of Morris, Case No. MRS-L-002501-24, and later was removed to the U.S. District Court for the District of New Jersey, Case No. Case 2:24-CV-11506.

[7] The elements of claim for breach of contract under New York law are: "[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010) (citation omitted). The Court applies New York law to Plaintiff's claims because "the parties cite New York cases or federal cases applying New York law, and 'such implied consent is sufficient to establish the applicable choice of law.'" *Feldman v. Mind Med., Inc.*, No. 23-CV-06169 (LGS), 2024 WL 3471299, at *6 (S.D.N.Y. July 19, 2024) (quoting *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)).

granted" on damages resulting from a breach of contract at an annual rate of 9%. N.Y. C.P.L.R. §§ 5001(a), 5004. Therefore, the Court will award prejudgment interest, at the statutory rate of 9% per year, calculated from August 14, 2023, the date when payment was due on the invoice on a net 30 basis. (*See* Pl.'s Ex. 9; *see also* JPTO Stip. ¶ 7.D.)

The Court further finds that Prompt then terminated the Agreement effective October 31, 2023. The Agreement did not contain a termination provision, and the Court finds that the 69-day notice period provided was reasonable.[8] *See Jinjit, Ltd. v. Jovani Fashion, Ltd.*, No. 14-CV-02585 (DAB), 2016 WL 11618504, at *7 (S.D.N.Y. Mar. 30, 2016) ("In New York, the general rule is that a contract that does not contain a termination provision is terminable upon reasonable notice.").[9]

Following termination, Prompt continued to provide warehousing services to Chic. The Court finds that Prompt is entitled to recover, under its alternative causes of action, the reasonable value of the services Prompt provided. Although, as the Court noted in a prior Opinion and Order in this case, Prompt does not identify the precise cause of action under which it seeks to recover the reasonable value of its warehousing services, *see Prompt Apparel LA, Inc. v. Chic Home Design LLC*, No. 24-CV-00279 (SDA), 2024 WL 4882203, at *5 (S.D.N.Y. Nov. 25, 2024), New

---

[8] The Court agrees with Plaintiff that the agreement to increase the storage rate was not for a set term and did not limit Prompt's termination rights. (*See* Pl.'s Post-Trial Br. at 14.)

[9] Chic's decision not to remove its goods after October 31, 2023 did not, in the Court's view, constitute acceptance of the terms set forth by Prompt in the termination notice. Thus, no new contract was formed at that time. *See Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms[.]").

York law provides that, in an action for unjust enrichment[10] or quantum meruit,[11] a successful plaintiff is entitled to "the reasonable value of the services" it provided. *Id*. at *5 n.6 (quoting *DG & A Mgmt. Servs., LLC v. Sec. Indus. Ass'n Compliance and Legal Div.*, 78 A.D.3d 1316, 1318 (3d Dep't 2010)).

The Court finds that $0.43 per cubic foot constitutes a reasonable value of the services that were provided post-termination. The Court credits Herman Friedman's testimony that "[i]t is an industry standard that holdover storage is one-and-a-half to two times the normal storage." (Trial Tr. at 31 (H. Friedman).)

The question remains regarding the period of time during which Prompt is entitled to recover storage fees. As a matter of equity, the Court finds that Prompt is entitled to recover for storage fees up to and including its January 1, 2025 invoices, but not thereafter. Following termination, Prompt had contemplated auctioning the inventory so as to remove it from the warehouse and avoid additional storage costs being accrued. However, Chic threatened to sue if Prompt did so, and Chic's lender actually did sue in order to stop an auction. Thus, it was reasonable and justified for Prompt not to conduct an auction. However, in the January 7, 2025 Settlement Agreement, Prompt was given permission for an auction to proceed. (*See* Defs.' Ex. BBBB.) Prompt declined to proceed with the auction for business reasons, but nothing prohibited

---

[10] "An unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Georgia Malone & Co., Inc. v Rieder*, 19 N.Y.3d 511, 516 (2012).

[11] "A plaintiff seeking to recover on a cause of action sounding in quantum meruit must demonstrate (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services allegedly rendered[.]" *Crown Const. Builders v. Chavez*, 130 A.D.3d 969, 971 (2d Dep't 2015).

Prompt after January 7, 2025 from pursuing an auction. Thus, the Court finds that Prompt is entitled to recover for storage fees up to and including its January 1, 2025 invoices.[12]

Accordingly, the Court finds that Prompt is entitled to recover on its unjust enrichment/reasonable value claims in the amount of $1,603,662.36, for the reasonable value of services rendered from November 2023 through January 2025, taking into account payments made by Chic. (*See* Pl.'s Post-Trial Br. at 18 & Ex. A; *see also id*. at 8-9; Pl.'s Exs. 10-16, 21-21, 24-25, 28-39, 32-45, 48.) The Court's award is consistent with Scenario 1 contained in Prompt's Post-Trial Brief inclusive of the January 1, 2025 invoices, after subtracting the $12,500.00 that is subject to Prompt's breach of contract claim. (*See* Pl.'s Post-Trial Br. at 18 & Ex. A.)

In their post-trial brief, Defendants state that during the pendency of this action, Chic ceased operations which led it to abandon "certain counterclaims." (Defs.' Post-Trial Br. at 1 n.1.) Chic does not identify which counterclaims purportedly remain, but argues that one issue remaining for the Court to decide is "whether Prompt is liable to Chic for damages related to its retention of the Inventory per its assertion of the lien." (Defs.' Post-Trial Br. at 5; *see also id*. at 11.) However, Chic did not present evidence at trial in support of its claim for damages and has not established that it is entitled to damages based on the value of the inventory. As set forth above, the Court finds that it was reasonable for Prompt to retain the inventory rather than auction it given the totality of the circumstances, including the threat of litigation.

---

[12] The Court recognizes that the January 1, 2025 invoices cover the period January 1 to 31, 2025. (See Pl.'s Exs. 46 & 48.) However, storage was billed at a monthly rate. (*See* Trial Tr. at 72-73 (H. Friedman).) Because it would not have been reasonable for Prompt to conduct an auction within a three-week period of January 7, 2025, the Court finds that allowing Prompt to recover the reasonable value of storage for the entire month is appropriate. (*See* Trial Tr. at 111 (H. Freidman) ("An auction takes weeks and months to arrange.").)

Finally, the Court declines to award damages against YX1. YX1 was not a signatory to the Agreement and the evidentiary record does not support a finding that YX1 assumed Chic's obligations under the contract. *See Alzal Corp. v. I.F.C. Int'l Freight Corp.*, No. 13-CV-02577 (PKC) (JO), 2015 WL 1298585, at *6 (E.D.N.Y. Mar. 23, 2015) ("Generally, a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." (quoting *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991)). Thus, there is no basis to award Prompt damages against YX1 for breach of contract. Nor has Prompt provided any basis for the Court to conclude that it conferred a benefit on YXI, as opposed to Chic, or that YX1 benefited from the warehousing services such that it should be liable to Prompt for the reasonable value of those services. (*See* Pl.'s Post-Trial Br. at 19-21.)

## **CONCLUSION**

For the foregoing reasons, Plaintiff is entitled to recover on its breach of contract claim from Defendant Chic the sum of $12,500.00, plus prejudgment interest, and on its remaining claims from Defendant Chic the sum of $1,603,662.36 for the reasonable value of services rendered.

The Clerk of Court is respectfully requested to enter judgment in favor of Prompt Apparel LA, Inc., and against Chic Home Design LLC in the sum of $1,616,162.36, plus prejudgment interest on $12,500.00 at the rate of 9% per annum from August 14, 2023 until the date that judgment is entered, and to close this case.

**SO ORDERED.**

Dated: New York, New York
May 31, 2025

_____
STEWART D. AARON
United States Magistrate Judge

11